1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7    SHAWN MCCARTY, et al.,                    Case No. 17-cv-06232-JD

8                 Plaintiffs,
                                              **ORDER RE CLASS CERTIFICATION**
9         v.
                                              Re: Dkt. No. 106
10   SMG HOLDINGS, I, LLC, et al.,

11                Defendants.

12           In this action alleging violations of California state employment laws, named plaintiffs

13   Shawn McCarty, Fabian Guerrero, and David Babcock move for class certification.  Dkt. No. 106.

14   The parties' familiarity with the record is assumed, and the motion is denied.

15                                  **DISCUSSION**

16           Defendants SMG, SMG Holdings I, LLC, and SMG Holdings II, LLC "operate large

17   venues throughout the State of California, including in the cities of Stockton, California and San

18   Francisco, California, including convention centers, arenas and theaters."  Dkt. No. 79 (TAC)

19   ¶ 20.  Plaintiff McCarty has worked for defendants since October 2008, including as a retail/sales

20   employee and assistant manager at the SMG Stockton Arena and SMG's Bob Hope Theater in

21   Stockton.  *Id*. ¶ 3.  Plaintiff Babcock worked for defendants from December 2012 to 2016, and

22   was a server and bartender at the SMG Stockton Arena and the Bob Hope Theater in Stockton.  *Id*.

23   ¶ 6.  Plaintiff Guerrero worked for defendants from August 2011 to April 2015; he was a cook at

24   the SMG Moscone Center in San Francisco.  *Id*. ¶ 9.

25           Plaintiffs request certification of two classes under Federal Rules of Civil Procedure 23(a)

26   and 23(b)(3):

27       •  San Francisco Class:  All non-exempt employees of defendant SMG in San
            Francisco, California during the period of October 27, 2013 through the date of the
28          order granting class certification ("Class Period").

- Stockton Class:  All non-exempt employees of defendant SMG in Stockton, California during the Class Period.

Dkt. No. 106 (Notice of Motion) at 1.

Plaintiffs also seek certification of twelve subclasses under Rules 23(a) and 23(b)(3):

- San Francisco Rounding Subclass:  All non-exempt employees of defendant SMG in San Francisco who were not paid for all time they were clocked in during the Class Period.

- San Francisco Meal Period Subclass:  All non-exempt employees of defendant SMG in San Francisco who worked one or more shifts over five hours during the Class Period.

- San Francisco Rest Break Subclass:  All non-exempt employees of defendant SMG in San Francisco who worked one or more shifts over 3.5 hours during the Class Period.

- San Francisco Reimbursement Subclass:  All non-exempt employees of defendant SMG in San Francisco who were not reimbursed by defendants for the cost of the use of their personal cell phones for SMG's business purposes incurred during the Class Period.

- San Francisco Wage Statement Subclass:  All non-exempt employees of defendant SMG in San Francisco who received a wage statement during the Class Period.

- San Francisco Waiting Time Subclass:  All non-exempt employees of defendant SMG in San Francisco who separated from their employment during the Class Period.

- Stockton Rounding Subclass:  All non-exempt employees of defendant SMG in Stockton who were not paid for all time they were clocked in during the Class Period.

- Stockton Meal Period Subclass:  All non-exempt employees of defendant SMG in Stockton who worked one or more shifts over five hours during the Class Period.

- Stockton Rest Break Subclass:  All non-exempt employees of defendant SMG in Stockton who worked one or more shifts over 3.5 hours during the Class Period.

- Stockton Reimbursement Subclass:  All non-exempt employees of defendant SMG in Stockton who were not reimbursed by defendants for the cost of the use of their personal cell phones for SMG's business purposes incurred during the Class Period.

- Stockton Wage Statement Subclass:  All non-exempt employees of defendant SMG in Stockton who received a wage statement during the Class Period.

- Stockton Waiting Time Subclass:  All non-exempt employees of defendant SMG in Stockton who separated from their employment during the Class Period.

*Id*. at 1-2.

Certification of the classes and subclasses is sought for eight of the claims alleged in the TAC:  (1) failure to provide required meal periods; (2) failure to provide required rest breaks; (3) failure to pay overtime wages; (4) failure to pay minimum wages; (5) failure to pay all wages due to quitting employees; (6) failure to furnish accurate itemized wage statements; (7) failure to indemnify employees for necessary business expenditures incurred in discharge of duties; and (8) violation of the Unfair Competition Law.  *Id*. at 2; *see also* TAC ¶¶ 37-74.

## I.  CLASS CERTIFICATION STANDARDS

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotations omitted).  The overall goal is "to select the method best suited to adjudication of the controversy fairly and efficiently."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (cleaned up).  Plaintiffs must show that their proposed classes satisfy all four requirements of Rule 23(a), and at least one of the subsections of Rule 23(b).  *Comcast*, 569 U.S. at 33; *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001).  As the parties seeking certification, plaintiffs bear the burden of showing that the requirements of Rule 23 are met for each of their proposed classes.  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

Rule 23 "does not set forth a mere pleading standard."  *Comcast*, 569 U.S. at 33 (citation omitted).  Rather, Rule 23(a) calls for the moving party to "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation."  *Id*. (emphasis in original; quotations and citation omitted).  The party seeking certification must also "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  *Id*.  Here, plaintiffs focus on Rule 23(b)(3), which permits certification when "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

1    The certification question is whether the case should be "conducted by and on behalf of the

2  individual named parties only" or as a class.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348

3  (2011).  Under Rule 23(a)(2), what matters "is not the raising of common 'questions' . . . but

4  rather, the capacity of a class-wide proceeding to generate common *answers*."  *Id.* at 350

5  (emphasis in original; quotations omitted).  And in the Rule 23(b)(3) context, plaintiffs must also

6  show that the proposed class is "'sufficiently cohesive to warrant adjudication by representation'"

7  because common issues predominate over questions affecting only individual class members.

8  *Amgen*, 568 U.S. at 469 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

9  Each element of a claim need not be susceptible to classwide proof; what Rule 23(b)(3) requires is

10  that common issues "'*predominate* over any questions affecting only individual [class]

11  members.'"  *Id*. (emphasis in original).  Class treatment is appropriate when the proposed class

12  "will prevail or fail in unison."  *Id*. at 460.

13    The Court's certification analysis "must be rigorous and may entail some overlap with the

14  merits of the plaintiff's underlying claim," but the merits questions may be considered only to the

15  extent that they are "relevant to determining whether the Rule 23 prerequisites for class

16  certification are satisfied."  *Amgen*, 568 U.S. at 465-66 (internal quotations and citations omitted).

17  The class certification procedure is decidedly not an alternative form of summary judgment or an

18  occasion to hold a mini-trial on the merits.  *Alcantar v. Hobart Service*, 800 F.3d 1047, 1053 (9th

19  Cir. 2015).  The decision of whether to certify a class is entrusted to the sound discretion of the

20  district court.  *Zinser*, 253 F.3d at 1186.

21  **II.    NUMEROSITY**

22    In the motion to dismiss order, the Court advised the parties that it would "undoubtedly be

23  taking a close look at the *Urbano* court's class certification denial order when plaintiffs seek

24  certification of the Stockton subclass in this case."  Dkt. No. 55 at 2.  Plaintiffs appear not to have

25  taken this to heart.  As was the case in *Urbano*, "the plaintiffs haven't even tried to explain how

26  *each sub-class* would be 'so numerous that joinder of all members is impracticable.'"  *Urbano v.*

27  *SMG Holdings, Inc.*, No. EDCV 15-00603 AG (MRWx), 2017 WL 9511537, at *7 (C.D. Cal.

28

United States District Court
Northern District of California

4

1   Mar. 3, 2017) (emphasis in original) (citing Fed. R. Civ. P. 23(a), (c)(5) ("When appropriate, a

2   class may be divided into subclasses that are each treated as a class under this rule.")).

3        In the discussion of numerosity, plaintiffs say not one word about how many people are in

4   any of their twelve proposed subclasses.  *See* Dkt. No. 106 at 9.  Plaintiffs appear to admit that

5   they in fact have no idea.  *See*, *e.g.*, Dkt. No. 130 at 12 (proposing a "survey" to identify who

6   might be in their proposed reimbursement subclasses).

7        Plaintiffs have failed to carry their burden of establishing numerosity for each of their

8   twelve proposed subclasses.  This alone means that certification of the subclasses must be denied.

9   **III.    COMMONALITY AND PREDOMINANCE**

10        Plaintiffs have also failed to satisfy commonality and predominance, on multiple scores.

11   The commonality requirement under Rule 23(a)(2) is satisfied when "there are questions of law or

12   fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Because "any competently crafted class

13   complaint literally raises common questions," the Court's task is to look for a common contention

14   "capable of classwide resolution -- which means that determination of its truth or falsity will

15   resolve an issue that is central to the validity of each one of the claims in one stroke."  *Alcantar*,

16   800 F.3d at 1052 (internal quotations and citations omitted).  What matters is the "capacity of a

17   class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."

18   *Dukes*, 564 U.S. at 350 (internal quotations omitted; emphasis in original).  This does not require

19   total uniformity across a class.  "The existence of shared legal issues with divergent factual

20   predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies

21   within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on*

22   *other grounds by Dukes*, 564 U.S. 338.  The commonality standard imposed by Rule 23(a)(2) is,

23   however, "rigorous."  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

24        Rule 23(b)(3) sets out the related but nonetheless distinct requirement that the common

25   questions of law or fact predominate over the individual ones.  This inquiry focuses on whether

26   the "common questions present a significant aspect of the case and [if] they can be resolved for all

27   members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022 (internal quotations and

28   citation omitted); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).  Each

United States District Court
Northern District of California

5

element of a claim need not be susceptible to classwide proof, *Amgen*, 568 U.S. at 469, and the "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). Rule 23(b)(3) permits certification when "one or more of the central issues in the action are common to the class and can be said to predominate, . . . even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 577 U.S. at 453 (internal quotations omitted).

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," *Comcast*, 569 U.S. at 34, and the main concern under subsection (b)(3) is "the balance between individual and common issues." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 560 (9th Cir. 2019) (en banc) (internal quotations omitted). Commonality and predominance can be assessed in tandem, with a careful eye toward ensuring that the specific requirements of each are fully satisfied. *See*, *e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120-21 (9th Cir. 2017).

### A.     Rest Break Claims

For San Francisco, plaintiffs say that SMG's "verbal rest break policy . . . fails to authorize and permit nonexempt employees to take full, duty-free rest breaks," and the "CBA's rest break provision also fails to authorize and permit duty-free, uninterrupted rest breaks." Dkt. No. 106 at 11. Similarly, for Stockton, plaintiffs point to "SMG's one-page policy," and say that the "Stockton policy . . . fails to authorize and permit nonexempt employees to take duty-free rest breaks because it provides that employees may be required to remain on the premises for their rest breaks." *Id*. at 12-13.

This is entirely insufficient. Plaintiffs seeking class certification must "affirmatively demonstrate . . . that there are *in fact* . . . common questions of law or fact." *Davidson v. O'Reilly Auto Enterprises, LLC*, 968 F.3d 955, 968 (9th Cir. 2020) (quoting *Dukes*, 564 U.S. at 350). "[T]he mere existence of a facially defective written policy -- without any evidence that it was implemented in an unlawful manner -- does not constitute '[s]ignificant proof,' [*Dukes*, 564 U.S.]

at 354, that a class of employees were subject to an unlawful practice." *Id*.  That is the case here, and plaintiffs have consequently failed to establish commonality.  *See id*.

Predominance is lacking for the same reasons.  In *Abdullah v. U.S. Security Associates, Inc.*, 731 F.3d 952 (9th Cir. 2013), the circuit panel affirmed the district court's finding of predominance where "nearly all of the evidence in the record -- including Flury's testimony about USSA's actual business practices, as well as the declarations of USSA's employees -- supports a finding that common questions would predominate."  731 F.3d at 965.  In support of predominance, the district court determined, "[f]or example, . . . that Flury's testimony described 'more than a policy,' since he also explained how USSA's 'policies and practices are implemented on the ground.'"  *Id*.  No similar evidence has been presented here.  Plaintiffs have pointed only to SMG's facial policies, Dkt. No. 106 at 11-13, and have offered insufficient evidence of how those policies were actually implemented "on the ground."[1]

Certification for the rest break claims is denied.

## B.    Rounding Claims

The San Francisco and Stockton rounding claims suffer from the same absence of commonality and predominance.  Plaintiffs say that SMG had a "policy and practice of rounding nonexempt employees' time worked for the entire class period to the nearest quarter hour throughout the class period" in both locations.  Dkt. No. 106 at 4, 7.  Plaintiffs also say that "[w]here an employee is under the control of his or her employer or engaging in work-related activities after he or she clocks in for work, a 'grace period' results in failure to compensate the employee for all hours worked."  *Id*. at 15.

---

[1] The Court based its analysis on the evidence plaintiffs presented in their Rule 23 discussion. Dkt. No. 106 at 9-19.  The *Urbano* court previously noted that the same counsel for plaintiffs had tendered a "mass of papers" which created confusion, and admonished counsel that "[j]udges are not like pigs, hunting for truffles buried in briefs."  2017 WL 9511537, at *7 (citation omitted).  In this case, the Court struck plaintiffs' first attempt at certification because they had filed "over 680 pages of discovery and deposition materials."  Dkt. No. 103.  Plaintiffs were consequently on notice, more so than the usual litigant, that the onus was on them to call out and make plain how the exhibits they put into the record related to the Rule 23 requirements for certification.  Like the *Urbano* court, the Court declines to undertake the task of sorting through all of plaintiffs' filed exhibits to determine whether certification is warranted.  That was plaintiffs' burden to carry.

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiffs correctly state in their reply brief that the California Supreme Court has recently held that "employers cannot engage in the practice of rounding time punches . . . in the meal period context." *Donohue v. AMN Services, LLC*, 11 Cal. 5th 58, 61 (2021).  But this is neither here nor there, as plaintiffs have given no indication that their rounding claims are limited to, nor even applicable to, meal periods.  *See* Dkt. No. 106-4 (Kirnosova Decl.) ¶ 7 ("SMG has rounded non-exempt employees' time worked for the entire class period to the nearest quarter hour"; "timekeeping system automatically rounds all employees' work time to the nearest 15 minutes").

For time worked outside of meal periods, a rounding policy is permissible if it is "facially neutral," *i.e.*, "rounds all employee time punches . . . without an eye towards whether the employer or the employee is benefitting from the rounding," and is "neutral in application," *i.e.*, "[s]ometimes [the employee] gained minutes and compensation, and sometimes [they] lost minutes and compensation." *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1079-80 (9th Cir. 2016).  Plaintiffs have not explained how this is an inquiry that is capable of classwide resolution "in one stroke." *Dukes*, 564 U.S. at 350.

Plaintiffs rather confusingly mention a "grace period" in the certification motion, but a grace period policy claim differs from a rounding policy claim, and "raises factual questions involving whether the employee was in fact working and/or whether the employee was under the employer's control during the grace period." *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 909 (2012).  Plaintiffs have offered no evidence suggesting that there was a grace period policy here, nor have they otherwise shown that whether the employees were working or under the employer's control during any grace period is the kind of question that can be answered on a classwide basis here.

### C.    Reimbursement Claims

Plaintiffs' certification argument for their reimbursement claims is paper thin.  Devoting less than half a page to the issue and citing no evidence at all, plaintiffs merely assert that "it was necessary for employees in both San Francisco and Stockton locations to use their personal cell phones to communicate with management regarding their schedules and work assignments," and "[y]et defendants failed to provide nonexempt employees with cell phone [*sic*], failed to reimburse

employees for the cost of the use of their personal cell phones for SMG's business purposes, and failed to maintain a cell phone reimbursement policy." Dkt. No. 106 at 16. This falls well short of meeting the burden to "satisfy through evidentiary proof" the requirements of Rules 23(a) and (b)(3). *Comcast*, 569 U.S. at 33.

Even if the Court were to consider the named plaintiffs' declarations, which plaintiffs failed to highlight in their certification analysis, there is not much there. Plaintiff McCarty states, "While I worked as a Merchandise Representative for SMG from October 2013 until approximately October 2015, my supervisors would text me while I was performing work-related tasks to tell me to go to a different area of the arena to provide assistance there." Dkt. No. 106-8 ¶ 9. Plaintiff Babcock states, "my supervisors would contact me on my cell phone about work," Dkt. No. 106-9 ¶ 7, while plaintiff Guerrero avers "my supervisors contacted me on my cell phone about work on a daily basis." Dkt. No. 106-7 ¶ 8; *see also* Kirnosova Decl. ¶ 5 ("Managers or supervisors are permitted to contact employees on their cell phones"). On the whole, this anecdotal and equivocal evidence does not constitute "significant proof that a class of employees were subject to an unlawful practice." *Davidson*, 968 F.3d at 968 (cleaned up).

### D.    Meal Break Claims

For the meal break claims, plaintiffs have submitted evidence of time records showing noncompliant meal periods. Dkt. No. 106 at 11 (San Francisco); Dkt. No. 130 at 5 (Stockton). It is true that this evidence does "raise a rebuttable presumption of meal period violations." *Donohue*, 11 Cal. 5th at 74. Even so, the Court cannot find predominance to support certification.

As plaintiffs acknowledge, in San Francisco, there are union employees who are subject to a written meal break policy pursuant to a collective bargaining agreement, and nonunion employees who are subject to a verbal meal break policy. Dkt. No. 106 at 3. In tacit acknowledgement of the certification problem this creates, plaintiffs state in their reply brief that the "approximately 21 administrative nonexempt [nonunion] employees . . . can be excluded from the meal break subclass." Dkt. No. 130 at 3. But there are other problematic variations too. As defendants state without opposition, the union employees, whose meal periods were paid under the CBA, recorded their meal periods "on their handwritten timesheets as opposed to recording them

1   on the time clock." Dkt. No. 125 at 10.  In contrast, the nonunion employees, who were subject to

2   a verbal meal period policy of an unpaid meal period of up to one hour, were "required to record

3   their meal breaks on the time clock."  *Id.* at 10-11.  Tellingly, plaintiffs themselves state that

4   "[m]anagers are responsible for ensuring their employees take meal breaks."  Dkt. No. 106 at 4.

5   As the Court has previously observed, without more, evidence of a manager-directed meal policy

6   "invites a 'fatal dissimilarity' of proof that bars a finding of commonality," as well as

7   predominance, "by highlighting the role of each manager's discretion about an employee's

8   breaks."  *Ochoa v. McDonald's Corp.*, No. 3:14-cv-02098-JD, 2016 WL 3648550, at *6 (N.D.

9   Cal. July 7, 2016).  The need for individualized inquiries -- including about the individual

10  managers' actions and decisions, the employee's union or nonunion status, the particular policy

11  the employee was subject to, the employee's method of timekeeping and about their individual

12  handwritten records -- all weigh against certification here.

13          The same kind of problems exist for Stockton, starting with the fact that SMG had "five

14  Stockton locations throughout the class period."  Dkt. No. 106 at 6.  In Stockton, there was a

15  "meal break waiver and meal period agreement form" for the employees, *id.*, although there is a

16  dearth of evidence or discussion about how those forms were utilized, or what percentage of

17  Stockton employees are alleged to have signed them and under what circumstances.  And again, as

18  with the San Francisco location, plaintiffs say that "[e]very director and every manager of each

19  department of SMG's Stockton locations is responsible for ensuring that their employees are

20  provided . . . meal periods."  *Id.*  The need for individualized inquiries discussed above will be

21  even greater for Stockton because of the five different SMG work locations there.  Individual

22  questions will consequently predominate for the Stockton meal period claims too.

23          **E.      Derivative Claims**

24          Plaintiffs say that their "claims for failure to furnish accurate itemized wage statements and

25  unfair and unlawful business practices are derivative of plaintiff's other claims."  Dkt. No. 106 at

26  17.  They ask for the derivative claims to be certified to the extent the underlying claims are

27  certified.  *Id.*  Certification for the derivative claims is not warranted for the same reasons the

28  Court has already stated.

United States District Court
Northern District of California

1   Because the factors the Court has discussed are sufficient to support the denial of the

2   pending class certification request in its entirety, the Court declines to discuss the remaining Rule

3   23 factors.

4                                        **CONCLUSION**

5   Class certification is denied.  The case is re-opened.  A jury trial on plaintiffs' individual

6   claims is set for November 28, 2022, at 9:00 a.m., with a pretrial conference to be held on October

7   27, 2022, at 1:30 p.m.

8   **IT IS SO ORDERED.**

9   Dated:  March 29, 2022

10

11

12   _____

      JAMES DONATO
13    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California